# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 13, 2010

## TONY HOOVER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-04655-56     Paula Skahan, Judge**

---

**No. W2009-01737-CCA-R3-PC  - Filed June 7, 2011**

---

The petitioner, Tony Hoover, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief.  The petitioner entered open *Alford* pleas to two counts of rape and two counts of incest.  Following a sentencing hearing, the trial court imposed an effective sentence of twenty-one years in the Department of Correction.  On appeal, the petitioner contends that his pleas were not entered with an understanding of the nature and consequences of the pleas. He also contends that trial counsel provided ineffective assistance by  failing to properly inform him of the terms and consequences of his guilty pleas and by advising him to waive his *ex post facto* rights and be sentenced pursuant to the 2005 amendments to the Sentencing Act.  Following careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Deena L. Knopf, Memphis, Tennessee, for the appellant, Tony Hoover.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alexia Fulgham, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The petitioner's convictions in this case arose from sexual acts committed against his two minor daughters.  The relevant underlying facts, as recited on direct appeal, are as

follows:

At the sentencing hearing, the following evidence was presented: [Victim One], sixteen at the time of the hearing, testified she was fourteen when she was raped by her father. She lived with her mother at that time and visited her father for Thanksgiving, along with her two sisters and her brother. [Victim One] testified that she was sitting in a back room watching television when the [petitioner] came in and repeatedly asked her to have sex with him. Eventually, because [Victim One] grew tired of his asking, she had sex with the [petitioner.] [Victim One] stated that this was not the first time she had sex with the [petitioner] and that all the previous instances also occurred at his residence. [Victim One] testified that the previous instances involved digital penetration "a lot" and oral sex "several" times. [Victim One] also described a card game where she, her half-sister, . . . and the [petitioner] all took off their clothes throughout the game. By the end, they were all naked. All of these acts occurred over a period of "five or six" years.

. . . .

[Victim Two], fifteen at the time of hearing, testified that she was thirteen at the time of these acts. The [petitioner,] her father, touched her vagina, chest, and buttocks when she visited him in Memphis. [Victim Two] stated that he digitally penetrated her vagina "many times," he performed oral sex on her, and he also engaged her in penile intercourse more than three times. . . . .

Angela Matthews, the victims' mother, testified that she had allowed her two oldest children, [Victims One and Two,] to visit their father, the [petitioner,] in Memphis. Prior to 2004, she had no worries about the [petitioner] and their children. She described her relationship with the [petitioner] as "really good" and said he was one of her best friends. After Thanksgiving 2004, her daughters came to her and described their problems with the [petitioner]. Matthews stated that, prior to learning of the situation, she witnessed [Victim Two's] behavior change drastically: [Victim Two] had been outgoing and no longer was, and her grades and behavior both declined. [Victim One] asked not to go to Memphis anymore, but she would not explain why.

. . . .

Josephine Anderson, the mother of the [petitioner's] daughter, T.H., who was fifteen at the time of these crimes, testified that T.H. was frequently at the [petitioner's] house, often when [Victim's One and Two] were also there. One time, T.H. arrived home with a "hicky," which she attributed to the [petitioner]. Anderson, however, thought nothing of it. . . . .

T.H. testified that she visited her father, [the petitioner,] when her sisters, [Victims One and Two,] were at his house. She recalled a card game where players who lost were required to remove an article of clothing. She, her two sisters, and the [petitioner] all played; they all ultimately removed all their clothes. After the card game, the [petitioner] asked T.H. to touch his penis, which she did. T.H. stated that the [petitioner] touched her vagina more than once with his fingers, and once with his mouth. Additionally, the [petitioner] touched her breasts and buttocks, and he gave her a "hicky." She stated she did not initially tell her mother because she was scared. . . .

*State v. Tony Hoover*, No. W2007-00326-CCA-R3-CD (Tenn. Crim. App. at Jackson, Jan. 7, 2008). Based upon the above conduct with regard to Victims One and Two, the petitioner entered open *Alford* pleas to two counts of rape and two counts of incest. He was not criminally charged with regard to his acts against T.H.

A sentencing hearing was subsequently conducted by the trial court. At the hearing, the petitioner, on the advise of trial counsel, waived his *ex post facto* rights and elected to be sentenced pursuant to the 2005 amendments to the Sentencing Act. The trial court then determined that the petitioner was a Range I offender and that he had a previous history of criminal convictions, a D.U.I., but placed little weight on that factor. *Id*. However, the court did consider the unrefuted testimony of T.H. regarding the petitioner's actions against her as prior criminal conduct. *Id*. Additionally, the court applied the enhancement factors that the offenses were committed to gratify the petitioner's desire for pleasure or excitement. *Id*. The trial court also applied in mitigation: (1) that the petitioner's conduct neither caused nor threatened serious bodily injury; (2) that the petitioner pled guilty rather than going to trial; and (3) his lack of a significant criminal record and his employment. *Id*. The trial court then ordered that the petitioner was to be sentenced to ten and one-half years for each rape and to four years for each incest conviction. Based upon the application of consecutive sentencing, the petitioner was ordered to serve an effective twenty-one-year sentence in the Department of Correction. *Id*. The petitioner appealed to this court, challenging only the consecutive nature of his sentences. Thereafter, a panel of this court affirmed the convictions and sentences as entered, concluding that the multiple instances of the petitioner's sexual penetration over a number of years which resulted in emotional damage warranted consecutive sentences. *Id*.

Next, the petitioner filed a premature *pro se* petition for post-conviction relief. He subsequently withdrew the petition and later timely re-filed the *pro se* petition with the court, with the grounds for relief being that he was denied his right to the effective assistance of counsel and that his convictions were based on a violation of the privilege against self-incrimination. Following the appointment of counsel, an amended petition was filed, which added as a ground for relief that the petitioner's pleas were involuntarily entered without his understanding the nature and consequences of the pleas.

An evidentiary hearing was then conducted, and both the petitioner and trial counsel offered testimony. The petitioner testified that he had met with trial counsel at least twice prior to trial, as well as at all court dates. He acknowledged that he had been provided with discovery, which he reviewed himself and with trial counsel. Moreover, the petitioner acknowledged that trial counsel had interviewed the State's witnesses, investigated the allegations made in the indictment, reviewed the indictment with him, and filed pretrial motions on his behalf. The petitioner also recalled that, early in the prosecution of his case, trial counsel communicated an offer from the State to plead guilty to the two rape charges, with the incest charges being dropped, and receive two concurrent eight-year sentences. The petitioner stated at the hearing that he rejected this offer. However, on the date of trial, the petitioner stated that he now wanted to accept the previously rejected offer. The State then informed the petitioner in open court that the offer was no longer available, and the petitioner was allowed time to discuss his options with trial counsel.

The petitioner testified that, at this point, his "mind went blank." He acknowledged discussing the options with trial counsel and, further, testified that counsel "gave [him] the reassurance it would be eight years." Based upon this understanding alone, the petitioner claims he then agreed to enter the open *Alford* pleas to all counts of the indictment. He also opined that trial counsel never mentioned the possibility of consecutive sentencing. However, he did acknowledge that the trial court, on the record, had reviewed with him the possibility that the sentences could be ordered to be served consecutively.

The petitioner testified that he vaguely remembered two sentencing hearings which took place in his case. He further recalled that, prior to the second hearing, trial counsel had him sign a document entitled "Waiver of *Ex Post Facto* Protections." According to the petitioner, he had no idea what the document was and, further, when he asked trial counsel, she informed him to "sign it, it will not affect you." According to the petitioner, trial counsel told him that he would "still be Range One, eight years."

Trial counsel also testified at the hearing and stated that she recalled speaking with the petitioner over twenty times during the course of her nineteen-month representation of the petitioner. She opined that she provided the petitioner with discovery and read over

witness statements with him on numerous occasions. Trial counsel also testified with regard to her efforts as to the victims' sexual history, stating that, in fact, she was successful at suppressing evidence that one of the victims had been diagnosed with herpes, which the victim attributed to the petitioner. She also testified with regard to her unsuccessful efforts to get the petitioner's statements to the police suppressed.

Trial counsel testified that in the course of the prosecution, the State offered the petitioner a plea agreement which would result in an effective ten-year sentence on all charges. Trial counsel testified that she successfully negotiated with the State and got the offer reduced to an effective eight-year sentence. However, when she presented the offer to the petitioner, he rejected the deal. Trial counsel also recalled that she explained in depth to the petitioner that he would be facing a possible effective sentence of thirty-six years. Counsel further recalled that on the day the trial was to begin, the petitioner decided to accept the State's offer. However, by this time, the State had withdrawn the offer of eight years. Trial counsel specifically testified that she never informed the petitioner that, after his rejection, the offer could be revived. She testified that she believed that the petitioner understood this at the time of his rejection of the offer. Trial counsel also testified that, prior to his accepting the open plea agreement, she again reviewed his possible exposure. She further denied that she had told the petitioner that he would get an eight-year sentence if he accepted the open plea agreement.

Based upon the dates on which the offenses were committed and the date the petitioner was being sentenced, trial counsel recognized that the petitioner could be sentenced under either the 2005 amendments or the prior law. She testified that she was aware that in order to be sentenced under the amended law, execution of a waiver of *ex post facto* protections would be required. According to trial counsel, she spoke with her colleagues in the public defender's office regarding which law should be utilized in the petitioner's case. She testified that they advised her, based on the facts of the case, that "it was a coin toss." Trial counsel testified that she discussed the various options with the petitioner and the ramifications of signing the waiver. She specifically testified that the petitioner appeared to understand the waiver which he signed when he elected to be sentenced under the amended sentencing law. Trial counsel acknowledged that, had the petitioner elected to be sentenced under prior law, the trial court would have been precluded from enhancing the sentences based upon a finding that the offenses were committed to gratify the petitioner's desire for pleasure or excitement.

After hearing the evidence presented, the post-conviction court found that the petitioner had failed to show his entitlement to relief and denied the petition. This timely appeal followed.

**Analysis**

On appeal, the petitioner contends that his guilty pleas were not knowingly and voluntarily entered because he was denied the effective assistance of counsel. In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical

-6-

decisions of trial counsel, however, is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Id*. at 458.

## I. *Ex Post Facto* Protections

The petitioner contends, as his only ground for ineffective assistance of counsel, that trial counsel provided ineffective assistance by advising him to waive his *ex post facto* protections and be sentenced pursuant to the 2005 amended sentencing law. Again, we note that the petitioner's argument regarding ineffective assistance of counsel is relevant only to the extent that it affects the voluntariness of the pleas. The petitioner's argument makes no reference to the effect of trial counsel's action upon his decision to plead guilty. Rather, he simply contends that trial counsel was deficient because the decision to proceed under the 2005 amended act resulted in a longer sentence, thus, establishing prejudice. Although somewhat misplaced, in the interest of completeness and finality, we will nonetheless address the petitioner's specific contentions.

The petitioner is correct in his recitation of the relevant caselaw provisions. Under the pre-2005 statutory sentencing scheme, the trial court was required to begin at the presumptive sentence within the applicable range and then to increase or decrease the sentence based upon the finding of enhancement or mitigating factors. *Carter*, 254 S.W.3d at 342. For all felony sentences, the presumptive sentence was the minimum within the range, except for Class A felonies, which were to start at the mid-point in the range. T.C.A. § 40-35-210(c). The weight the trial court afforded any applicable enhancement and mitigating factors was left to the trial court's discretion. *Carter*, 254 S.W.3d at 342.

However, as is now well established in our caselaw, the pre-2005 sentencing act was held unconstitutional, as it violated a defendant's constitutional right to a jury trial. In *Blakely*, the United States Supreme Court held that, "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely*,

542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Thus the "statutory maximum" to which a trial court may sentence a defendant is not the maximum sentence after application of appropriate enhancement factors, but rather, other than the fact of a prior conviction, the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id*. at 303. As such, under *Blakely*, the "statutory maximum" sentence which may be imposed is the presumptive sentence applicable to the offense. *See id*. The presumptive sentence may be exceeded without the participation of the jury only when the defendant has a prior conviction or when an otherwise applicable enhancement factor was reflected in the jury's verdict or was admitted by the defendant. In *State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007) (*Gomez II)*, our supreme court, after much litigation, recognized that "to the extent the [1989 Criminal Sentencing] Reform Act permitted enhancement based on judicially determined factors other than the fact of a prior conviction, it violated the Sixth Amendment." *Gomez II*, 239 S.W.3d at 740.

There is no dispute in this case that the petitioner was entitled to elect which law he would be sentenced under. The 2005 public acts provided that a defendant tried after the effective date of June 7, 2005, for crimes committed after July 1, 1989, and before the act's effective date could elect to be sentenced under the 2005 act by executing a waiver of their *ex post facto* protections. Nor is there a dispute in this case that the petitioner did, in fact, execute such a waiver and was sentenced under the amended law. His argument, however, is that trial counsel was ineffective for advising him to do so because it resulted in longer sentences, as the trial court was able to apply the now discretionary enhancement factors to increase the sentence lengths. Specifically, the petitioner asserts that the trial court could not have utilized the "sexual gratification or pleasure" factor and, further, that the court could not have relied upon the testimony of the victim's half-sister in its weighing of prior criminal conduct not charged if he had been sentenced under the propr law.

While we understand the jest of the petitioner's argument and note some validity in that the pre-2005 law would have allowed only application of the prior criminal history enhancement factor, we cannot conclude that he has established his entitlement to relief on the issue. Trial counsel testified that she investigated the pros and cons of sentencing under both the prior and amended versions of the law. Moreover, we would note that, at the time of sentencing, the law applicable in Tennessee was *State v. Gomez*, 163 S.W.3d 632, 649-50 (Tenn. 2005) ("*Gomez I*"), which held that our sentencing structure did not run afoul of the Sixth Amendment. In light of this, as well as trial counsel's research into the matter, we cannot conclude that her advice to the petitioner would fall "outside the range of reasonable" at the time. Counsel did not have the benefit of *Gomez II*, decided eight months after this case, in which the Tennessee Supreme Court overruled their decision in *Gomez I* and found that *Blakely* did, in fact, apply. We note that in reviewing counsel's conduct, a "fair

assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). As such, based on the facts here, we are hard pressed to conclude that trial counsel rendered deficient performance in this case.

Moreover, with regard to prejudice, we note that the petitioner has failed to present an argument which would definitely conclude that he would have received a shorter sentence under the prior law. While the trial court would have been precluded from use of the "sexual pleasure or gratification factor," the court could still have applied the factor for prior criminal history and determined the appropriate weight to give it under the circumstances. Additionally, while the petitioner's argument focuses on that the court could not have considered the uncharged sexual conduct against the petitioner's third daughter because it was not admitted or found by a jury, it ignores that the court could have considered, and put great weight on, the petitioner's admitted history of alcoholism and illicit drug use. The petitioner has simply failed to carry his burden in this case.

## II. Voluntary and Knowing Plea

The petitioner also contends that his guilty pleas were not entered knowingly and voluntarily because he lacked an understanding of the nature and consequences of the pleas. Specifically, he bases his argument on the fact that the State withdrew the previously rejected argument on the day of trial when the petitioner had decided to accept it. He contends that his "mind went blank" and that he was not capable of understanding what was transpiring or of making a reasoned decision on whether to proceed or enter open pleas. Finally, he asserts that he would have not accepted the pleas had trial counsel not told him he would receive an eight-year sentence if he accepted the agreement or if she had explained the possibility of consecutive sentencing.

However, the argument that his "mind went blank" does not preponderate against the findings of the post-conviction court that the pleas were entered appropriately. The transcript of the guilty plea hearing reflects that the petitioner was informed of charges against him, the potential sentencing exposure he faced, and the range of punishments for the charged offenses by trial counsel. Additionally, the record reflects that the trial court reiterated the explanations given. The petitioner responded on the record that the pleas were being entered voluntarily.

Moreover, trial counsel testified at the sentencing hearing that, prior to the hearing, she had also explained to the petitioner the potential exposure he faced. Additionally, she specifically stated that she never indicated to the petitioner that the original eight-year-

sentence offer could be revived. She testified that "[i]n no way did I ever tell him he would get eight again. I never told him that."

Based upon this evidence, the post-conviction court concluded that the petitioner wanted to enter the guilty pleas. The court went on to find that trial counsel had spoken with her client and discussed all options, as well as the ramifications of entering the pleas. Again, we must conclude that nothing in the record preponderates against this finding that the pleas were entered knowingly and voluntarily. The petitioner stood before the court and, under oath, stated that he was entering the pleas voluntarily and knowingly. He cannot now repudiate that statement merely by asserting that his "mind went blank." As such, the petitioner has not established his entitlement to relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE